# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3880 | **DATE** | 2/9/2004 |
| **CASE TITLE** | Rodriguez vs. Woodall | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies defendant's motion to dismiss the second amended complaint (16). Defendants are ordered to answer the second amended complaint within ten days of this order. The case is set for a status hearing on 2/24/04 at 9:30 a.m., for the purpose of discussing the possibility of settlement.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | FEB 17 2004 date docketed | |
| ✓ | Docketing to mail notices. | | | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | U.S. DISTRICT COURT CLERK | | |
| OR | courtroom deputy's initials | 04 FEB 16 PM 3:30 | date mailed notice | |
| | | Date/time received in Central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



DOCKETED
FEB 17 2004

ANGEL RODRIGUEZ )
)
      Plaintiff, )
)
vs. ) Case No. 03 C 3880
)
JON WOODALL, ERNEST HALVORSEN )
and CITY OF CHICAGO, )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

    Angel Rodriguez has filed suit against Chicago Police detectives John Woodall and Ernest Halvorsen, and the City of Chicago under 42 U.S.C. §1983, alleging that, while acting within the scope of their employment as Chicago Police officers, they violated his right to a fair trial under the Due Process Clause of the Fifth and Fourteenth Amendments of the United States Constitution. Defendants have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the ground that Rodriguez failed to bring suit within the applicable statute of limitations. For the reasons stated below, the Court denies defendants' motion.

### Facts

    The following facts are taken from Rodriguez's complaint, which the Court accepts as true for the purposes of defendants' motion to dismiss.

    On November 24, 1996, Ibrahim Zayed was shot and killed while working at his grocery store, Karlov Foods. Andrew Bolton, a store employee, witnessed the shooting and described the



killer as a "light-skinned male, white or white Hispanic, who had never come into the store before." Bolton also stated that he had never seen him around the neighborhood.

Defendant Halvorsen showed Bolton many sets of photographs, but he was unable to make an identification, and after several months, Halvorsen and Woodall had no suspect in the shooting. Under pressure to solve the case, Halvorsen and Woodall allegedly threatened to charge Bolton with conspiracy to commit murder to force him to identify someone so that they could close the case. Woodall, in particular, wanted to close the case to cover-up his involvement with Chicago Police detective Miedzianowski in a narcotics trafficking conspiracy. Halvorsen and Woodall knew Rodriguez had been at church when the shooting occurred, but they believed that he would make a convenient suspect.

Sensing that Bolton was about to "cooperate," Halvorsen and Woodall again began showing Bolton photo arrays, which now always included pictures of Rodriguez. Bolton concluded, based on Rodriguez's repeated inclusion in the photo arrays, that Halvorsen and Woodall wanted him to identify Rodriguez as the shooter. To keep from being charged himself and to prevent further harassment, Bolton identified Rodriguez as the shooter. In March 1997, Bolton picked Rodriguez out of a police lineup, but Woodall had told Bolton beforehand that Rodriguez would be in the lineup and that he was likely Zayed's killer. Halvorsen and Woodall never told prosecutors that they pressured Bolton into identifying Rodriguez, or that Bolton had told them he had seen the real killer (who was not Rodriguez) buying a snow blower about a week after the shooting.

Rodriguez was indicted for the murder of Zayed and went to trial in the Circuit Court of Cook County, on March 6, 1998. The prosecution offered the eyewitness testimony of Bolton

2

and the corroborating testimony of Halvorsen and Woodall. The prosecution also offered the testimony of an Assistant State's Attorney, who testified that Rodriguez, while in the process of denying involvement in the shooting, blurted out "fake gun" without having been told that Zayed was holding a toy gun at the time of the shooting. The prosecution argued that only the shooter would know that Zayed was holding a toy gun at the time he was shot, but it never offered any evidence that Zayed was, in fact, holding a toy gun. On March 10, 1998, the jury found Rodriguez guilty of Zayed's murder, and he was sentenced to sixty years in the Illinois Department of Corrections.

On March 31, 2000 the Illinois Appellate Court reversed Rodriguez's conviction because of the lack of reliable evidence, and on August 14, 2000, Rodriguez was released from custody. On February 18, 2003, Rodriguez petitioned the Illinois Prisoner Review Board for a grant of executive clemency. A hearing was held on plaintiff's petition on July 9, 2003, during which plaintiff, his sister, and others offered testimony. Although the State's Attorney's Office opposed plaintiff's initial release from custody, it did not oppose his clemency petition, which is still pending.

Rodriguez filed this suit on June 6, 2003.

## Discussion

Dismissal under Rule 12(b)(6) is appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Kennedy v. Nat'l Juvenile Det. Ass'n,* 187 F.3d 690, 695 (7th Cir. 1999). In considering the motion, the court accepts as true the facts alleged in the complaint and draws reasonable inferences from those facts in favor of the plaintiff. *Jackson v.*

*E.J. Brach Corp.*, 176 F.3d 971, 977 (7th Cir. 1999); *Zemke v. City of Chicago*, 100 F.3d 511, 513 (7th Cir. 1996).

Defendants argue that Rodriguez's §1983 claim is barred by Illinois's two year, personal injury statute of limitations, which both parties concede applies to such claims. Citing to *Heck v. Humphrey*, 512 U.S. 477 (1994), defendants assert that the statute of limitations began to run once the Illinois Appellate Court overturned Rodriguez's conviction in August 2000, and therefore his §1983 claim is barred because it was not filed until June 2003. Rodriguez contends that the earliest the statute of limitations could have began to run was sometime in early 2003, when Woodall was arrested for and pled guilty to conspiring with other police officers to commit crimes, which included pinning crimes on innocent people. Rodriguez contends that it was not until after discovering this information that he began to suspect that Woodall may have intentionally pinned Zayed's murder on him. Alternatively, Rodriguez argues that, the statute of limitations should be tolled because Woodall fraudulently concealed his violation of Rodriguez's due process rights.

Defendants' motion is premised largely on the proposition that a claim arising from a wrongful conviction necessarily accrues when the conviction is reversed. But although *Heck* says that such a claim cannot be filed until the conviction has been overturned or vacated, it does not stand for the proposition that a claim of this type must be filed within two years (or whatever the applicable period is) of the conviction's reversal. Rather, a claim accrues when the plaintiff knows or should know that his constitutional rights were violated. *Wilson v. Giesen*, 956 F.2d 738, 740 (7th Cir. 1992). The violation in this case was not the conviction itself -- the Seventh Circuit has held that §1983 does not permit a claim for malicious prosecution, *see Newsome v.*

4

*McCabe*, 256 F.3d 747, 751 (7th Cir. 2001) -- but rather the detectives' failure to disclose that they had coerced Bolton to falsely identify Rodriguez and their failure to disclose Bolton's statement that implicated someone else and thus exculpated Rodriguez.

The question the Court must decide is whether there is no set of facts consistent with Rodriguez's claim under which the statute of limitations began to run on or after June 6, 2001. The fairly obvious answer to this question is no. Certainly Rodriguez knew he had been wrongly convicted, but that does not inevitably translate into knowledge that the conviction resulted from a *Brady* violation or other police misconduct. Witnesses sometimes get it wrong without any help; taking the complaint in the light most favorable to Rodriguez, he had no way to know at the time of his trial that Bolton's false testimony resulted from coercion or that exculpatory information had been withheld. Bolton is not a representative of the state, and thus if he were mistaken or lying for his own reasons, Rodriguez's due process rights would not have been violated.

The reversal of Rodriguez's conviction on appeal did not add any new information to the mix. The Appellate Court did not address any of the matters on which Rodriguez's claim is based; it but merely reversed his conviction on the grounds that there was not enough credible evidence to convict him. In other words, the court simply found that the prosecution had not met its burden of proof, not that Rodriguez had been deprived of his right to a fair trial.

Defendants object to Rodriguez's reliance on Woodall's indictment and guilty plea to federal drug charges because it is not alleged in the complaint. The short answer to this is that these matters are in no way necessary to defeat defendants' motion. In the present context, the burden is on defendants to show that Rodriguez necessarily should have known of defendants'

misconduct before June 6, 2001. Because they cannot make that showing, the specific date *after* June 2001 on which Rodriguez was put on notice of Woodall's involvement in criminal activity is beside the point.

### Conclusion

For the reasons stated above, the Court denies defendants' motion to dismiss the second amended complaint [Docket #16]. Defendants are ordered to answer the second amended complaint within ten days of this order. The case is set for a status hearing on February 24, 2004 at 9:30 a.m. for the purpose of discussing the possibility of settlement.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 9, 2004

6