# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge If Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 3880 | **DATE** | 11/12/2004 |
| **CASE TITLE** | Rodriguez vs. Woodall | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth on the attached Memorandum Opinion and Order, the Court denies defendants Woodall, Halvorsen, and City of Chicago's motions for summary judgment (38-1). The case is set for a status hearing on 11/16/04 at 9:30 a.m. Trial counsel are directed to appear, as the Court intends to reset the trial date.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| | Notices mailed by judge's staff. | NOV 15 2004 | |
| | Notified counsel by telephone. | date docketed | |
| ✓ | Docketing to mail notices. | | 52 |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| OR | courtroom deputy's initials | date mailed notice | |
| | Date/time received in central Clerk's Office | mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

ANGEL RODRIGUEZ, )
)
      Plaintiff, )
)
vs. ) Case No. 03 C 3880
)
JON WOODALL, ERNEST HALVORSEN, )
and CITY OF CHICAGO, )
)
      Defendants. )

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Angel Rodriguez has sued Chicago police detectives Jon Woodall and Ernest Halvorsen under 42 U.S.C. § 1983, claiming that they violated his right to a fair trial. He alleges that Woodall and Halvorsen coerced a witness to falsely identify him as a murderer and withheld this information from the prosecution at his trial. Rodriguez has also sued the City of Chicago for indemnification pursuant to 745 ILCS 10/9-102. The defendants have moved for summary judgment. For the reasons outlined below, the Court denies the defendants' motion.

### Facts

On March 10, 1998, a jury in the Circuit Court of Cook County convicted Rodriguez of murder, and a judge sentenced him to sixty years in the Illinois Department of Corrections for entering a grocery store and shooting Ibrahim Zayed, the owner of the store. The Illinois Appellate Court reversed the conviction on March 31, 2000 because of the lack of reliable evidence against Rodriguez. On June 6, 2003, Rodriguez filed this suit against Woodall and

1

Halvorsen, two of the detectives involved in the murder investigation, alleging that they wrongfully pressured a witness into falsely identifying him as the shooter and failed to inform prosecutors of this.

Halvorsen evidently first became involved with the murder investigation on January 15, 1997, when he was asked to locate Andrew Bolton, a seventeen year old who was working with Zayed at the time of the shooting, to show him a photo array of possible suspects. Defs' 56.1 Stmt. at ¶ 11. Halvorsen showed Bolton six photos, but he failed to identify anyone. But Halvorsen did not stop there; in an affidavit, Bolton claims that Halvorsen repeatedly came to his house and showed him photographs. Bolton Aff. ¶ 10. In March 1997, Halvorsen showed Bolton an array of six photos that included a picture of Rodriguez. Bolton selected Rodriguez's picture. *Id.* at ¶ 20; Bolton Dep. at 10-12.

Rodriguez contends that Halvorsen coerced Bolton to identify Rodriguez by repeatedly showing Bolton photo arrays that always included Rodriguez's picture and by threatening Bolton. Pl's 2d Am. Compl. ¶ 44. As evidence of this misconduct, Rodriguez directs the Court's attention to Bolton's affidavit. In that affidavit, Bolton stated that Halvorsen "repeatedly" came to his house and showed him photographs and asked if Bolton could identify the killer from the photographs. Bolton Aff. ¶ 10. Bolton said that Halvorsen "suggested to me that I had something to do with" the murder, which made Bolton scared he could be charged. *Id.* ¶ 11. Bolton stated that he ultimately chose Rodriguez from the photo array "only because his photograph was always included with other photographs that were shown to me," which suggested to Bolton that the police wanted him to select Rodriguez. *Id.* ¶ 14.

Halvorsen acknowledges that he presented photo arrays to Bolton on two separate

2

occasions, but he claims that he "did not pick out, point to or suggest that Bolton choose plaintiff's photograph in any way." Defs' 56.1 Stmt. at ¶ 21. As evidence that he conducted the photo arrays properly, Halvorsen refers the Court to Bolton's testimony during his deposition that the police did not suggest that he select Rodriguez's picture and that paragraph 18 of his affidavit is inaccurate in that regard. Bolton Dep. at 11-12, 26. Bolton also testified at the criminal trial that he truthfully picked out Rodriguez from the photo array. Crim. Trial Tr. at 88.

Detective Woodall's only involvement with the Zayed murder investigation occurred in March 1997, when he conducted a line-up for Bolton and Tyrone Reaves, the two witnesses to the murder. Reaves was just outside the store after the shooting and saw the suspect fleeing down the sidewalk. During the line-up, Bolton purportedly identified Rodriguez as the shooter. Crim. Trial Tr. at 133. Rodriguez, however, contends that this identification was coerced by Woodall.

Rodriguez alleges that Woodall pressured Bolton to select Rodriguez as the shooter by pointing at Rodriguez during the line-up and making comments about his criminal record and background. Specifically, Bolton stated in his April 23, 2003 affidavit that despite the fact that he knew Rodriguez was not the shooter, he selected Rodriguez out of the line-up due to pressure from Woodall who was "constantly saying, 'this got to be the guy he is from around the area and is known.'" Bolton Aff. at ¶ 16. Similarly, when asked during his deposition in this case whether the officer told him to pick out a certain person, Bolton answered that before he picked anyone, the officer pointed at Rodriguez and said "Look at this guy. His background, it's messed up. He the only one around the neighborhood be robbing and stealing, doing–you know, doing a lot of

3

crimes." Bolton Dep. at 14.[1]

Bolton further testified that the officer at the line-up suggested that he, Bolton, might have been involved in the Zayed murder and threatened that if he did not pick someone out of the line-up, the police might start questioning him. *Id.* at 36-38. Somewhat inconsistently, however, Bolton later seemed to say that he had already picked Rodriguez out of the line-up when the officer made this statement. *Id.* But a jury reasonably could understand Bolton to be saying that this threat was made before the identification; arguably nothing else makes sense.

Reaves corroborates key aspects of Bolton's testimony in his own affidavit. He states that although Bolton initially told the officer that none of the suspects in the line-up were the shooter, the officer then asked if he was sure it was not number three, because "[h]e fits the description." Reaves Aff. at ¶¶ 23-24. Reaves testified that Bolton at that point acknowledged that Rodriguez looked like the shooter and became positive that he was the shooter after the officer continued to make references to Rodriguez's background and neighborhood. *Id.* at ¶¶ 25-27.

Woodall contends, however, that the evidence submitted by Rodriguez contradicts Bolton's sworn testimony at the trial and his deposition in this case. During Rodriguez's criminal trial, Bolton testified that he picked out Rodriguez from the line-up. Defs' 56.1 Stmt. at ¶ 35. Later, in his May 17, 2004 deposition, Bolton confirmed that he had testified truthfully at the trial when he said that Rodriguez had killed Zayed, *id.* ¶ 43, and also admitted that at the time of the line-up, he was sure that Rodriguez was the shooter and that he had told the truth when he

---

[1] At his deposition, Bolton was unable to identify Woodall as the officer at the line-up who suggested that he may have been involved in Zayed's murder. Bolton Dep. at 37. But Woodall has acknowledged that he was present during Bolton and Reaves' viewing of the line-up and that he spoke to them during the process. Defs' 56.1 Resp. at ¶ 10. Defendants have offered no evidence that the statements alleged by Bolton were made by another officer.

4

picked him out. *Id.* at ¶¶ 41-42; Pl's 56.1 Resp. at ¶¶ 41-42. Woodall likewise points out that despite the fact that Reaves denied in his affidavit himself picked Rodriguez out of the line-up, this was at odds with his testimony before the grand jury that he did pick Rodriguez out of the line-up as Zayed's murderer. Reaves Aff. at ¶ 22; Grand Jury Tr. at 16. Finally, the defendants highlight the fact that Bolton testified that he did not read the affidavit before he signed it and that it was not notarized in his presence. Bolton Dep. at 22-23. (Bolton testified at his deposition, however, that only two paragraphs of the affidavit were inaccurate – paragraphs 15 and 18. *See id.* at 23-28.)

## Discussion

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In determining whether a genuine issue of material fact exists, the Court must construe all facts and draw all reasonable and justifiable inferences in favor of Rodriguez, the non-moving party in this case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

1. **§ 1983 Claims for Deprivation of Right to Fair Trial**

Rodriguez claims that Halvorsen and Woodall violated his right to a fair trial as guaranteed by the Due Process Clauses of the Fifth and Fourteenth Amendments by intentionally influencing and coercing Bolton to falsely identify Rodriguez as Zayed's murderer and failing to

5

disclose this coercion to prosecutors or Rodriguez's defense counsel.[2] To succeed in a § 1983 action, Rodriguez must demonstrate that he was deprived of a federal right by one or more persons acting under color of state law. *Ienco v. City of Chicago*, 286 F.3d 994, 997-98 (7th Cir. 2002). Section 1983 provides a remedy for certain trial-related government misconduct, in particular *Brady* violations, that violate the due process rights of an accused. *Newsome v. McCabe*, 256 F.3d 747 (7th Cir. 2001); *Ienco*, 286 F.3d at 998. A colorable due process claim of this sort must include allegations that the detectives obstructed justice or withheld information or evidence necessary to ensure that the defendant received a fair and impartial trial. *See, e.g., Ienco*, 286 F.3d at 998-99; *Patterson v. Burge*, 328 F. Supp. 2d 878, 889 (N.D. Ill. 2004); *see Brady v. Maryland*, 373 U.S. 83 (1963). Thus, to survive summary judgment, Rodriguez must submit evidence sufficient for a reasonable trier of fact to find that the detectives violated his constitutional right to a fair trial.

According to Rodriguez, the defendants violated his rights by influencing and pressuring Bolton to select Rodriguez as the murderer during the photographic and in-person line-ups and withholding this information from prosecutors. As evidence of this misconduct, Rodriguez points to Bolton's statements in his affidavit and deposition, along with Reaves' testimony that prior to Bolton selecting Rodriguez, Woodall pointed to him and suggestively made references to his criminal propensity.

---

[2] Rodriguez further alleges that the detectives violated his right to a fair trial by tricking him into declaring that the decedent had a "fake gun" at the time he was shot and later using this evidence against him at trial. Pl's 2d Am. Compl. at ¶ 44. But Rodriguez has provided no evidence that either of the defendants were involved in or even present when Rodriguez "confessed" to knowledge of the fake gun. It appears that only Assistant State's Attorney Sean Gallagher witnessed Rodriguez's "confession" and later testified to the conversation at trial. *See* Pl's 56.1 Resp. at ¶ 46-53. Since § 1983 liability attaches only if the individual defendant caused or participated in a constitutional deprivation, the Court finds that neither defendant could be found liable by a reasonable jury on the question of the fake gun. *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1039 (7th Cir. 1998).

6

The defendants counter that both Bolton and Reaves' affidavits contradict their sworn testimony at Rodriguez's trial and, as to Bolton, some aspects of his later deposition testimony about the circumstances of their identifications. They rely on a rule, established by the Seventh Circuit in the summary judgment context, that once a witness gives deposition testimony in a case that is damaging to a party's cause, that party cannot create a genuine issue of fact sufficient to defeat summary judgment by presenting a post-deposition affidavit by the witness that takes back the damaging testimony. *Bank of Illinois v. Allied Signal*, 75 F.3d 1162, 1168 (7th Cir. 1996).

It is readily apparent that this rule has no bearing on the present situation. First, the rule concerns "affidavits that contradict . . . *prior* depositions," *Bank of Illinois*, 75 F.3d at 1168-69. In this case there are no post-deposition affidavits.

Second, defendants cite no authority holding that once a witness has testified at a criminal trial, his testimony is somehow preserved in formaldehyde. Such a rule effectively would immunize from liability, or even scrutiny, dishonest law enforcement officers who coerce or otherwise fabricate evidence to frame an accused. Of course we make no judgment that this is what occurred here. But there is no basis for a rule that would effectively preclude the Court, on summary judgment, or a jury, at trial, from considering a prosecution witness's testimony that he was coerced or convinced by the police to lie.

Third, Bolton's deposition does not contradict the critical aspects of his earlier affidavit. There is no significant contradiction at all with regard to Woodall's actions. As to Halvorsen, taking the testimony in the light most favorable to Rodriguez (as we must do at this stage), Bolton appears to be saying that his affidavit is wrong only in that only that Halvorsen did not

7

*expressly* suggest that he should select Rodriguez's picture. But Bolton did not contradict the statements in his affidavit about the suggestive nature of Halvorsen's actions or his earlier implied threat to Bolton. In short, Bolton's affidavit, like any affidavit submitted in support of or in opposition to summary judgment, is properly taken at this stage of the case as indicating he would testify consistently with it at trial, except perhaps for the one relatively insignificant clarification we have noted.

Next, we must determine whether the defendants' purported conduct amounts to a *Brady* violation, as Rodriguez claims. The duty to turn over exculpatory evidence applies to investigating officers as well as prosecutors. *Manning v. Miller*, 355 F.3d 1028, 1034 (7th Cir. 2004) (citing *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)); *see also Newsome v. McCabe*, 256 F.3d 747, 752 (7th Cir. 2001). The Seventh Circuit has held that it was clearly established long before the events in this case that police could not withhold exculpatory information about their conduct at identification procedures. *Newsome*, 256 F.3d at 752-53; *see also Manning*, 355 F.3d at 1033. Given this precedent, and taking the evidence in the light most favorable to Rodriguez, the Court finds that a reasonable jury could find against both defendants on Rodriguez's due process claim. For this reason, the Court denies the defendants' motion for summary judgment as to the merits of the claims.

## 2. Qualified Immunity

Woodall and Halvorsen also argue that they are entitled to qualified immunity on Rodriguez's § 1983 claims. Though the issue of qualified immunity is a question of law for the court, it nevertheless involves consideration of the plaintiff's factual contentions. *Mitchell v. Forsyth*, 472 U.S. 511, 528 (1985). As a threshold question, the Court must determine whether,

taken in the light most favorable to Rodriguez, the facts as alleged show that the detectives' conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001). As the Court has just discussed, the answer to this initial inquiry is yes with regard to both detectives. Viewing the facts in favor of Rodriguez, a reasonable jury could conclude that both Halvorsen and Woodall engaged in the alleged conduct and that this constitutes a *Brady* violation that deprived Rodriguez of his due process right to a fair trial.

Next, the Court must examine whether that right was clearly established at the time the detectives' disputed conduct took place. *Id.*; *Manning v. Miller*, 355 F.3d 1028, 1033-34 (7th Cir. 2004). Rodriguez easily clears this second hurdle. Long prior to the actions of Halvorsen and Woodall, it was well established that investigators who withhold exculpatory evidence about identification procedures from defendants violate the defendant's constitutional right to a fair and impartial trial. *Newsome*, 256 F.3d at 752-53; *see also Manning*, 355 F.3d at 1034 (holding that although no decision prior to defendant's actions dealt with a factually identical *Brady* claim, it was sufficient for purposes of the inquiry that the investigators withheld exculpatory evidence from the defendant). Thus, the Court concludes that detectives Woodall and Halvorsen are not entitled to summary judgment on their defense of qualified immunity.

### 3. City's Motion for Summary Judgment

Rodriguez's lone claim against the City of Chicago is for indemnification pursuant to 745 ILCS 10/9-102. In Illinois, a public entity can be directed to pay any tort judgment or settlement for compensatory damages for which an employee acting within the scope of his employment is liable. *Id.* As this Court has determined that Woodson and Halvorsen could potentially be held liable for violating Rodriguez's constitutional right to a fair trial, the City is likewise potentially

9

liable to Rodriguez. Summary judgment is therefore inappropriate, and the Court denies the City's motion.

## 4. Statute of Limitations

The defendants ask the Court to revisit the issue of whether Rodriguez's claims are time-barred by the applicable statute of limitations. Defendants presented a similar argument to the Court in their motion to dismiss Rodriguez's second amended complaint. In that motion, defendants maintained that the statute of limitations began to run once the Illinois Appellate Court overturned Rodriguez's conviction in August 2000. The Court found that although the reversal was a necessary predicate for Rodriguez's suit, the constitutional violation of which he complained was not the conviction itself, but rather the detectives' failure to disclose that they had influenced and coerced Bolton to falsely identify Rodriguez. Because defendants could not show that Rodriguez necessarily should have known of the detectives' misconduct before June 6, 2001, their motion to dismiss was denied. Defendants now contend that since that ruling, discovery has revealed that Rodriguez was on notice of these claims far more than two years prior to June 6, 2003 when he filed this action.

Both parties agree that Rodriguez's § 1983 claims are governed by Illinois' two year, personal injury statute of limitations. A § 1983 cause of action accrues when the plaintiff knew or should have known that his constitutional rights were violated. *Barry Aviation Inc. v. Land O'Lakes Municipal Airport Comm'n*, 377 F.3d 682, 688 (7th Cir. 2004). Thus, the two year statute of limitations starts to run "when a reasonable person would know enough to prompt a deeper inquiry into a potential cause." *Nemmers v. United States*, 795 F.2d 628, 632 (7th Cir. 1986). Rodriguez bears the burden of showing that the discovery rule applies. *Koelle v. Zwiren*,

10

284 Ill. App. 3d 778, 786-87, 672 N.E.2d 868, 874 (1996) ("When a plaintiff asserts the discovery rule in response to a statute of limitations defense, the burden is on plaintiff to show that the rule applies."); *see generally, Bontkowski v. Smith*, 305 F.3d 257, 762 (7th Cir. 2002) (when federal court borrows state statute of limitations, it also borrows state tolling doctrine). To preclude summary judgment, Rodriguez therefore must submit evidence showing that there exists a genuine issue of material fact as to whether he reasonably could have known prior to June 6, 2001 that he had been injured by the detectives' misconduct.

Rodriguez maintains that he was unaware that Woodall and Halvorsen had actually coerced Bolton to identify Rodriguez until April 2003, when he learned of the misconduct through Bolton's affidavit. Defendants argue that Rodriguez's trial strategy in the criminal case and the fact that he contended at the criminal trial that Bolton had falsely identified him show that Rodriguez had notice of these claims as early as 1998. This argument is wholly without merit. As Rodriguez avers, and the Court noted in denying the motion to dismiss, the fact that he knew he had been wrongly identified does not translate into knowledge that the conviction resulted from a *Brady* violation. Mistakes can be made without a guiding human hand, and this is particularly true of eyewitness identifications.

Moreover, Rodriguez's counsel at no point during the criminal trial argued that Bolton's confession was the product of the coercive police techniques he has since uncovered. Indeed, it is relatively safe to assume that had Rodriguez been aware of the detectives' alleged misconduct at the time of trial or on appeal, his defense counsel would have moved to exclude the identifications on that basis. In any event, defendants are essentially arguing for a rule that any criminal defendant who believes he was wrongly convicted must, on that basis alone, discover

11

the grounds for a lawsuit within two years of his conviction being overturned, at peril of being forever barred from suit. They have offered no authority in support of such a rule, and the Court declines to adopt the proposal.

Defendants also argue that there is evidence indicating that Rodriguez's family was on notice soon after the criminal trial that Rodriguez's constitutional rights may have been violated. Ruth Pena, Rodriguez's sister, testified that in August 1999, she made a complaint to the Chicago Police Department's Office of Professional Standards claiming that her brother was framed by the detectives because they falsely arrested her brother, improperly conducted the line-up, and had shown Bolton only one photo of her brother during the photo array. Pena Dep. at 40, 77-83. Though Pena admits she suspected wrongdoing by the officers, she stated that at the time she filed the complaint, she had no evidence of this. *Id.* at 83. Defendants concede that Pena lacked a factual basis for her complaint, as her belief that wrongdoing occurred came from observing trial testimony. *See* Pl's 56.1 Stmt. at ¶ 3; Defs' 56.1 Resp. at ¶ 3. And her suspicion that Woodall framed her brother was also based on her discovery in 1999 or 2000 that Woodall was involved in unrelated criminal wrongdoing for which he was later indicted and convicted. Defs' 56.1 Stmt. at ¶ 61; Pl's 56.1 Resp. at ¶ 61. In short, Pena had no facts suggesting that the detectives engaged in misconduct during the identification procedures in her brother's case.

Defendants also point to the testimony of Rodriguez's brother, George Rodriguez, that "right after" his brother's conviction, he learned that police had allegedly told Bolton whom he should pick in the line-up. Defs' 56.1 Stmt. at ¶ 62; Pl's 56.1 Resp. at ¶ 62. George acknowledged that he conveyed this information to his brother. Defs' 56.1 Stmt. at ¶ 63; Pl's 56.1 Resp. at ¶ 63. But George's actual testimony about what he "knew" is much less helpful to

defendants; it appears only that he heard from some unknown source that some other officer (identified in his deposition as Ray Cuvera) had told Bolton that Rodriguez was the offender. G. Rodriguez Dep. at 42. This apparent third-hand information appears to have been little more than street talk or rumor; it is insufficient to entitle the defendants to summary judgment on the statute of limitations defense.

In sum, though a reasonable jury could find the evidence cited by defendants sufficient to establish that Rodriguez was on notice of his injury prior to June 6, 2001, a jury likewise reasonably could conclude that mere speculation and rumor did not give Rodriguez notice that he had been injured by wrongful conduct sufficient to trigger the statute of limitations. It is not uncommon for convicted felons or their families to think that the conviction was the result of a frame-up, but that is not enough to start the clock running without more.

Rodriguez has met his burden of showing that material facts are in dispute concerning the point at which Rodriguez should have reasonably been aware of the detectives' misconduct. Summary judgment is therefore inappropriate. *See Kedzierski v. Kedzierski*, 899 F.2d 681, 683 (7th Cir. 1994) (holding that summary judgment is not appropriate when material facts are in dispute as to when a reasonable person should have known he was wrongfully injured); *Koelle*, 284 Ill. App. 3d at 787, 672 N.E.2d at 874 (noting that the question of when an injured party knows or should know of his injury is a question of fact for the jury unless it is apparent from the undisputed facts that only one conclusion can be drawn).

## Conclusion

For the reasons stated above, the Court denies defendants Woodall, Halvorsen, and City of Chicago's motions for summary judgment [docket no. 38]. The case is set for a status hearing

13

on November 16, 2004 at 9:30 a.m. Trial counsel are directed to appear, as the Court intends to

reset the trial date.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: November 12, 2004